30599. COCHRAN *v.* STEWART.

DECIDED SEPTEMBER 27, 1944.

*R. S. & C. W. Foy,* for plaintiff.

*W. D. Aultman, W. J. Wallace,* for defendant.

PARKER, J.  On February 13, 1941, J. T. Stewart, the defendant in error, executed an instrument in the form of a deed, but headed "Timber Lease," conveying to J. T. Cochran, the plaintiff in error, all of the timber not below 8 inches in diameter 12 inches above the ground on 202 1/2 acres of described lands.  They covenanted and agreed by the instrument that Cochran should have full use and enjoyment of said timber, "including the right to cut and remove the same from the said lands within one year from above date;" and the instrument conveyed to Cochran the right and privilege of entering upon and occupying the lands "so far as may be necessary in the cutting and removing of said timber," and the use of the land for timber purposes "during the time aforesaid." These are the only references or stipulations in the contract relating specifically to the *time* in which the grantee had to cut and remove the timber, and there was no forfeiture clause in the contract.  On September 19, 1942, Cochran filed an action of trover against Stewart for the lumber alleged to have been manufactured from logs fallen, trimmed, and topped, and lying on the ground on lands described in the contract when it expired.  The evidence for the plaintiff tended to show that the timber, from which the lumber sued for was sawed, was cut down, trimmed, and cut into lengths suitable for sawmill purposes by the plaintiff in January and before February 13, 1942, and before the expiration of the contract; that the logs were left there on the ground and later sawed into lumber by the defendant.  It was agreed between the parties, apparently in open court and during the trial of the case, that in April and May, 1942, the defendant sawed from the logs found on the land described in the contract, which had been cut by the plaintiff, 87,280 feet of lumber.  There was no agreement as to the dates the timber from which the lumber was manufactured was cut from the land.  Evidence for the defendant tended to show that the plaintiff cut at least a portion of the timber in question in February, 1942, and that he was cutting the timber as late as the week before the fourth Sunday in February, which was after the expiration of the contract. The defendant in his testimony said

the biggest portion of the cutting—half of it, anyway—was done between the 15th and the 22nd of February. The plaintiff testified that none of the timber was cut after the expiration of the contract on February 12, 1942. The jury returned a verdict in favor of the defendant. A motion for new trial was duly made, by the plaintiff, and after being amended was heard and overruled. Error is assigned on that ruling.

■ The motion for new trial presents only one question for our decision. The court charged the jury that after February 12, 1942, the date the contract expired, the plaintiff would not have any right either to cut or remove any timber from the lands of the defendant; and that after that date all timber on the land, whether standing or cut into logs and left on the ground, would be the property of the defendant. One excerpt from the charge complained of is as follows: "I charge you that under the terms of that written contract . . Mr. Cochran would have to finish cutting and finish hauling away the logs that he claims belonged to him on or before midnight of February 12, 1942. In other words, he had a year to cut the timber and the same time in which to haul the timber away. He would have to cut it and haul it away before the 13th of February, 1942, in order to maintain his suit before you now." If the construction the court placed on the contract was correct, manifestly the verdict of the jury was right. If the court's construction of the contract was wrong, it follows that the charge complained of was error and a new trial should have been granted.

In *Johnson* v. *Truitt,* 122 *Ga.* 327 (50 S. E. 135), all the timber and logs suitable to be manufactured into cross-ties on described land were sold by Truitt, to Johnson in an instrument providing that the grantor was to have twelve months in which "to manufacture said timber into cross-ties and remove the same." The contract which was in the form of a deed also provided that "at the expiration of said time this lease expires, and all the timber left thereon is to revert to the said H. G. Truitt, his heirs and assigns." On the evening of the day fixed in the contract for the expiration of the right to cut the cross-ties, Johnson left a few ties lying upon the land. He sent for these ties the next day, and Truitt refused to permit them to be taken, saying that the lease had expired and that the ties were his (Truitt's). Truitt subse-

582

quently sold them and thereupon Johnson brought a trover action against him for the value of the ties. The jury found for the plaintiff, and the grant of a new trial to the defendant by the trial court was reversed by the Supreme Court. Justice Cobb, speaking for the court, said: "We are clear that when the trees and logs were, during the twelve months period, manufactured into cross-ties, the title to the ties passed to Johnson absolutely and for all time. . . We are inclined to think that Johnson had a right to go upon the land and remove the cross-ties after the expiration of the twelve months. But whether this be so or not, certainly Truitt could not convert to his own use Johnson's ties. One does not lose the title to his property by wrongfully leaving it on another's premises. He would be liable for any damages occasioned by his wrongful act in leaving the property on the premises of another; and might be liable in trespass for entering the other's premises for the purpose of taking possession of his property; but his wrongful act in leaving his property on the other's premises would not justify another wrong on the part of the owner of the premises, that is, the conversion of the property to his own use." In *Jones* v. *Graham*, 141 *Ga*. 60 (2) (80 S. E. 7), it was held: "Where timber contemplated by the contract was cut and detached from the soil within the time specified in the contract, but not removed from the land of the grantor, the title of the grantee was not lost merely by failure to remove the timber from the land within the time specified." While timber growing upon land is a part of the realty (*Coody* v. *Gress Lumber Co.*, 82 *Ga*. 793, 10 S. E. 218), when it is cut and severed from the land it becomes personalty, and it may be the subject-matter of an action in trover even after being manufactured into lumber, cross-ties, or other products. *Milltown Lumber Co.* v. *Carter*, 5 *Ga. App.* 344 (63 S. E. 270). In the instant case it appears from testimony offered by the plaintiff that the lumber for which the suit was brought was sawed from timber cut down and severed from the realty, and trimmed and cut into lengths suitable for sawmill purposes before the expiration of the contract. The rulings in the cases cited seem to control this case in favor of the plaintiff in error. Under these authorities and in the absence of a forfeiture clause in the contract we hold that the construction placed upon the contract by the trial court was incorrect, and that the charges complained of were erroneous, and that the court erred in refusing to grant a new trial.

Counsel for the defendant in error cite no case which holds contrary to the rulings in *Truitt* v. *Johnson* and *Jones* v. *Graham,* supra, but they do cite in their supplemental brief *Morgan* v. *Perkins,* 94 *Ga.* 353 (21 S. E. 574), and *A. C. Alexander Lumber Co.* v. *Bagley,* 184 *Ga.* 352 (191 S. E. 446). These cases are also cited by the plaintiff in error. In the *Morgan* case it was said that: "The courts in some of the States have held that where standing timber is sold, and a time is agreed upon in which it is to be removed, and it is not removed within the time agreed upon, the purchaser does not lose his right, after the expiration of that time, to enter upon the land and remove it. [Citing authorities.] These rulings are based upon the ground that standing timber is personalty and not realty. If it is personalty, these decisions are right; but this court has held that standing timber is not personalty, but realty." We do not construe that case as holding differently from our holding herein. It tends to support our ruling because the timber involved here had become personalty by having been cut down and severed from the soil. *A. C. Alexander Lumber Co.* v. *Bagley* dealt with an injunction to restrain the defendants from cutting and removing the timber on the lands involved after the expiration of the time limit set out in the deed. It did not deal with the specific question presented by the record in the instant case, and is not contrary to our present ruling.

■ There was an issue as to whether all of the timber sued for was cut before the expiration of the twelve months provided in the contract. The plaintiff acquired no title to any timber not actually felled and detached from the realty during the term of the contract, and any recovery by him is limited to timber cut and left upon the ground when the contract expired. This issue can be determined upon another trial.

*Judgment reversed. Sutton, P. J., and Felton, J., concur.*